# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

VLADIMIR STOJCEVSKI                **DEMAND FOR JURY TRIAL**

      Plaintiff,

                                  Case No.

V.


COUNTY OF MACOMB,
SHERIFF ANTHONY M. WICKERSHAM,
MICHELLE M. SANBORN, CORRECT CARE SOLUTIONS
(CCS), LAWRENCE M. SHERMAN, M.D., TEMITTIPE OLAGBAIYE,
RN, MONICA CUENY, RN,  DAVID ARFT, RN, DEEANN PAVEY,
LPN, CYNTHIA DEVIEW, LPN, VICKI BERTRAM, LPN, DINAL GOOD,
LPN, SARAH BREEN, LPN, DIXIE DEBENNE, LPN, AMBER BARBER,
LPN, LINDA PARTON, LPN, CO. OXLEY, CO. PINGELLEY, CO.
BLOUNT, CO. HARRISON, CO. DAVIS, CO. DEHATE,

      Defendants.

---

IHRIE O'BRIEN
By: Robert D. Ihrie (P26451)
Harold A. Perakis (P35921)
Attorney for the Plaintiffs
24055 Jefferson Avenue, Suite 2000
St. Clair Shores, Michigan 48080
(586) 778-7778
ihrieobrien@hotmail.com
perakislaw@hotmail.com

---

## **PLAINTIFF, VLADIMIR STOJCEVSKI CIVIL RIGHTS COMPLAINT AND DEMAND FOR JURY TRIAL**

1

NOW COMES Plaintiff, VLADIMIR STOJCEVSKI, by and through his attorneys, IHRIE O'BRIEN by ROBERT D. IHRIE and HAROLD A. PERAKIS, and for Plaintiff's Complaint, states unto this Honorable Court as follows:

## I.   INTRODUCTION

1.   This is a civil rights action under 42 U.S.C. Section 1983 resulting from events that happened during the post-sentence detention of Vladimir Stojcevski, Decedent, (hereinafter Vladimir) at the Macomb County Jail Facility (hereinafter Facility) in Mt. Clemens, Michigan.

2.   The events that gave rise to this Complaint began June 11, 2014, and culminated in the Plaintiff being sent directly from the Facility to McLaren Medical Center suffering from symptoms of the following serious medical conditions: (1) Systemic inflammatory response syndrome criteria with possible sepsis; (2) Acute peritoneal cellulitis; (3) Muscular edema secondary to infection versus inflammation of the bilateral gluteus maximus muscle group; (4) Acute encephalopathy, nonspecific etiology; (5) Possible rectal mucosal tear secondary to anal trauma; (6) Leukocytosis; (7) Acute intractable rectal and abdominal pain; (8) Sacral wound; and (9) Mild

2

hypokalemia.

3.      As is detailed below numerous Macomb County Defendants, Corporate Defendant CCS, and Individual Defendants caused Vladimir's injuries and avoidable pain, suffering and mental anguish by repeatedly violating his rights under the 8th Amendment to the United States Constitution, as detailed herein.

4.      Macomb County Defendants, CCS, and Individual Defendants unconstitutional and deliberately indifferent actions, individually and/or collectively, contributed to or caused the unnecessary and wanton pain and suffering to Vladimir, included:

- failing to provide sufficient and timely medical care and treatment to Vladimir that would have addressed Vladimir's serious medical needs and would have alleviated the unnecessary and wanton pain and suffering to Vladimir;

- failing to respond to a known substantial risk of harm, infection, and other serious medical conditions that developed while he was incarcerated;

- failing to maintain and implement policies, practices, procedures and protocols to assure Vladimir adequate nourishment and hydration,

disregarding his obvious malnourishment, dehydration and extreme weight loss of between seventeen percent (17%) and eighteen percent (18%) of his total body weight of 165 pounds after only eight (8) days of incarceration at the Facility, the weight loss occurring during a five-day detoxification protocol implemented by Defendant DR. SHERMAN;

- failing to monitor Vladimir's food and water intake sufficiently resulting in Vladimir's severe dehydration and weight loss that contributed to the need for hospitalization merely 12 days after his incarceration at the facility;

- detaining Vladimir under inhumane and unsanitary conditions of confinement without adequate access to sanitary needs for several days, thereby contributing to Vladimir's compromised physical state upon admission to McLaren Regional Hospital;

- Macomb County Defendants Wickersham and Sanborn failing to accurately audit the facility during the Facility's self-assessment reviews provided to the Michigan Department of Corrections for the 2013 and 2014 calendar years;

- Defendant CCS Medical Director, policy-maker, and Supervisor DR.

4

LAWRENCE SHERMAN's (hereinafter DR. SHERMAN) failing to train or supervise his medical staff, including his nurse practitioner under his direct supervision, Defendant TEMITOPE OLADOKUN OLAGBAIYE, RN (hereinafter RN OLAGBAIYE), thereby resulting in Defendant OLAGBAIYE's inability to access infectious processes and nutritional deficits that exacerbated those processes, thereby resulting in VLADIMIR's suffering the serious medical conditions that required his hospitalization twelve (12) days after his incarceration.

- Defendant DR. SHERMAN's failing to supervise and direct unskilled Macomb County corrections officers on how to adequately monitor Vladimir's food and water intake, as well as how to identify obvious and serious medical symptoms of malnourishment and dehydration, especially after Defendant DR. SHERMAN's institution of an alcohol or sedative hypnotic withdrawal protocol;

- Defendant DR. SHERMAN's reckless and deliberately indifferent delegation of his medical assessment and observational obligations to those unskilled and untrained corrections officers, thereby resulting in the highly predictable constitutional violations alleged herein;

- Macomb County Defendants, CCS, and Individual Defendants, and

5

Supervisory Defendants causing Vladimir to endure extreme and needless pain and suffering prior to his transfer to the hospital on June 23, 2014;

- Macomb County Defendants and CCS implementing, tolerating and consistently ratifying Defendants' customs and practices that constitutionally failed so miserably prior to Vladimir's admission to the hospital, including tolerating and acquiescing in CCS Defendants and Macomb County Defendants' unconstitutional deliberately indifferent conduct prior to, and during, Vladimir's incarceration that resulted in violations of: (1) David Stojcevski's constitutional right to be free from cruel and unusual punishment during his June, 2014 incarceration at the facility; and (2) Jennifer Lynne Meyers constitutional right to be free from cruel and unusual punishment during her June and July, 2013 incarceration at the facility.

5. Vladimir was admitted to the hospital on June 23, 2014 suffering from numerous serious medical conditions that were not in existence upon his incarceration twelve (12) days earlier.

## II.     JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction over the Plaintiff's

6

civil right claims under 42 U.S.C. Section 1983, pursuant to 28 U.S.C. 1331 (federal question) and 28 U.S.C. 1343 (civil rights).

7.     This Court has personal jurisdiction over all of the named defendants because they either reside in the State of Michigan and/or do systematic and continuous business in Michigan.

8.     Venue is proper in this jurisdiction under 28 U.S.C. Section 1391(b) because all of the events that support the plaintiff's allegations occurred in this judicial district and because the defendants reside in this judicial district.

## III.   PARTIES

### A.     Plaintiff

9.     Plaintiff, VLADIMIR STOJCEVSKI, is a temporary resident of Ingham County in the State of Michigan, with his permanent residence being in Macomb County, in the State of Michigan.

### B.     Macomb County Defendants

10.     At all times relevant to this lawsuit, Defendant, COUNTY OF MACOMB is a political subdivision of the State of Michigan duly organized and carrying out governmental functions pursuant to the laws of Michigan, one of the functions being to organize, operate, staff and supervise its detention center commonly known as the Macomb County Jail/Macomb

County Correctional Facility. (hereinafter referred to as Facility). The Facility is a jail that confines pre-trial detainees and convicted inmates.

11.     At all times relevant to this lawsuit, Defendant, SHERIFF ANTHONY M. WICKERSHAM (hereinafter SHERIFF WICKERSHAM), believed to be a resident of the State of Michigan, was the Sheriff of Macomb County and the policy maker for the Facility and represented the ultimate repository of law enforcement power in the Facility. Defendant SHERIFF WICKERSHAM was acting within the scope of his employment and under color of state law in his official capacity and is being sued in his official capacity as policymaker as Sheriff, as well as in his individual capacity (see below).

12.     At all times relevant to this lawsuit, Defendant, MICHELLE M. SANBORN as the Macomb County Jail Administrator, (hereinafter SANBORN) believed to be a resident of the State of Michigan, was also the policy maker for the Facility and represented, along with Defendant Sheriff Wickersham, the ultimate repository of law enforcement power in the Facility. Defendant Sanborn was acting within the scope of her employment and under color of state law in her official capacity and is being sued in her official capacity as policymaker and Jail Administrator.

8

13.     At all times relevant to this lawsuit, including but not limited to dates before, during and after June 11, 2014 until June 23, 2014, Defendants SHERIFF WICKERSHAM and SANBORN had the charge and custody of the Facility and formulated and oversaw policies, practices, regulations, protocols, and customs therein and had the authority for hiring, screening, training, supervising, and disciplining of deputies, corrections officers and medical staff.  This authority to formulate and oversee the facilities practices, policies, procedures, protocols and customs is reflected in their job descriptions, their daily official duties, and in their joint preparation of Self Audits prepared by said Defendants SHERIFF WICKERSHAM and SANBORN during the calendar years 2013 and 2014, and submitted to the Michigan Department of Corrections.

14.     In 2013 and 2014, Defendants SHERIFF WICKERSHAM and SANBORN jointly prepared and approved the Facility's Self Audits that confirmed and demonstrated Defendants Wickersham and Sanborn's extensive and all-encompassing knowledge of the Facility's operations, including the Facility's policies, procedures and practices related to operations in the correctional, mental health and medical departments of the Facility.

15.     In those self-audits, Defendants SHERIFF WICKERSHAM, Individually and in his official capacity, and SANBORN, in her official capacity, failed to fully disclose to the State of Michigan that those same policies, procedures and practices maintained by the Facility resulted in the unconstitutional and deliberately indifferent acts against Vladimir in June, 2014, David Stojcevski in June, 2014, and Jennifer Lynne Meyers in June and July 2013.

16.     By failing to disclose the unconstitutional actions of CCS personnel and Macomb County corrections officers in those self-audits, Defendant MACOMB COUNTY, Defendant SHERIFF WICKERSHAM, and Defendant SANBORN evinced a tolerance to, acquiescence in, and ratification of the unconstitutional actions of Macomb County corrections officers, command officers, and Defendant CCS personnel contracted by Defendant MACOMB COUNTY to provide medical care and other services to its population.

17.     Defendant MACOMB COUNTY contracted with Defendant CCS to provide medical care, mental health care, nursing care, and other services to its population of inmates. Although the County sought to privatize the provision of healthcare services to these inmates, the County cannot contract

away its constitutional obligations and is legally liable for the constitutional violations committed by such providers.

## C.     Corporate Defendant CCS

18.     Upon information and belief, Correct Care Solutions, LLC (hereinafter CCS) is the only corporate entity with which Macomb County contracted, and/or with which subcontracts were made, to provide medical care, emergency medical care, and mental health services to inmates at the Facility during the period in question.

19.     At all times relevant to this lawsuit, Defendant, CCS, is a foreign limited liability company licensed to do business in Michigan, with its principal place of business believed to be located in the State of Tennessee. At all times pertinent hereto, CCS was obligated by direct contract or sub-contract with Macomb County to provide managed healthcare, medical care, and/or mental health care to the Facility inmates generally, and to Vladimir specifically, a post-sentence inmate in the Facility from June 11, 2014 through June 23, 2014, the date he was transferred to Mt. Clemens Regional Medical Center. Upon information and belief, CCS helped to formulate the and implement the policies, procedures, protocols, and staff training related to medical care and/or mental health care at the Facility.

11

20.     Upon entering into the contracts and/or subcontracts to provide managed healthcare, medical care, and/or mental health care to Macomb County Jail inmates, CCS was assuming public functions, acting under color of state law, and legally responsible to comply with all requirements of the United States Constitution. The Corporate Defendant is considered a "person" and is properly sued under 42 USC 1983.

**D.     Individual Defendants**

21.     The individual Defendants named herein include the Medical personnel employed by Defendant CCS, as well as the correctional personnel employed by Defendant County of Macomb. Each of those individuals is identified below.

**DEFENDANT DR. LAWRENCE SHERMAN (SUPERVISOR and POLICY MAKER)**

22.     Upon information and belief, at all material times herein, Defendant DR. LAWRENCE SHERMAN (DR. SHERMAN) was the Chief Medical Director of the Facility, and is believed to reside in the State of Michigan, and at all times relevant to this lawsuit was an agent, employee, and/or subcontractor of corporate Defendant CCS or Macomb County. As Medical Director of the facility, DR. SHERMAN was a policymaker for CCS who

12

developed and implemented policies, practices, procedures, and protocols for the Facility by reviewing corporate policies, procedures, and protocols, and approving same to meet the Facility's needs. Defendant DR. SHERMAN also saw inmates, oversaw their medical care so as to, inter alia: ensure that inmates such as Vladimir received emergency medical care for emergent medical conditions; ensure that inmates such as Vladimir received adequate nutrition and hydration consistent with DR. SHERMAN's obligation to provide medical treatment to inmates such as Vladimir for serious medical needs; ensure that inmates such as Vladimir received individualized medical treatment that reflected medical decision-making; implement practices, policies and procedures that would not promote, allow, or tolerate unconstitutional violations of inmates such as Vladimir's right to be provided care for their serious medical needs, their right to be free from unnecessary and wanton pain and suffering caused by those violations, and their right to be free from a serious risk of harm. At all material times, this defendant was acting under color of state law.

**DEFENDANT TEMITIPE OLAGBAIYE, RN (RN OLAGBAIYE)**

23.     Defendant, RN OLAGBAIYE, is believed to reside in the State of Michigan, was an agent, employee and/or subcontractor of corporate

Defendants CCS, and at all times material hereto, was acting as the Nurse Practitioner at the Facility, under the direct supervision of Defendant DR. SHERMAN.

## DEFENDANT HSA ADMINISTRATOR DAVID ART, RN, (SUPERVISOR AND POLICY-MAKER)

24.     As the Health Service Administrator, HSA ARFT was a policy-maker for CCS and a supervisor of the Director of Nursing, Defendant MONICA CUENY, RN (RN CUENY).   In those dual roles, Defendant HSA ARFT was responsible for: (a) developing and implementing policies, practices, procedures and protocol for the Facility by taking corporate policies, reviewing them, and modifying the policies and procedures to meet the Facility's needs, Macomb County Jail; (b) overseeing and directing Defendant CUENY to assure that the tailored policies and procedures of the Facility were maintained and consistently implemented so as protect the constitutional rights of Vladimir, and other inmates at the Facility, including, inter alia: the inmates' rights to emergency medical care for emergent conditions, adequate nutrition and dehydration; the inmates' right to continuity of care supported by accurate and timely record keeping; the inmates' rights to adequate  communication of medical and mental health

14

concerns and assessment amongst and between CCS medical and mental health personnel and Defendant Macomb County corrections officers and command officers; and the inmates' right to be protected from   unnecessary wanton pain and suffering. At all material times, this defendant was acting under color of state law.

**DEFENDANT MONICA CUENY, RN (SUPERVISOR)**

25.     Defendant MONICA CUENY, RN (RN CUENY) believed to reside in the State of Michigan, was an agent, employee, and/or subcontractor of corporate Defendants CCS, and as the Director of Nursing in the facility, was responsible for providing health care to Plaintiff Vladimir Stojcevski during his post-sentence detention at the Facility, and for supervising the nursing care provided Vladimir at the facility. At all material times, this Defendant was acting under color of state law.

26.     Defendant DEEANN PAVEY, LPN (LPN PAVEY) believed to reside in the State of Michigan, was an agent, employee, and/or subcontractor of corporate Defendants CCS, and was responsible for providing medical care to Vladimir during his post-sentence detention at the Facility. At all material times, this Defendant was acting under color of state law.

27.     Defendant, CYNTHIA DEVIEW, LPN, (hereinafter LPN DEVIEW)

15

believed to reside in the State of Michigan, was an agent, employee, and/or subcontractor of corporate Defendants CCS, and was responsible for providing medical care to Vladimir during his post-sentence detention at the Facility. At all material times, this Defendant was acting under color of state law.

28.     Defendant, VICKI BERTRAM, LPN (hereinafter LPN BERTRAM) believed to reside in the State of Michigan, was an agent, employee, and/or subcontractor of corporate Defendants CCS, and was responsible for providing medical care to Vladimir during his post-sentence detention at the Facility. At all material times, this Defendant was acting under color of state law.

29.     Defendant DINAL GOOD, LPN (hereinafter LPN GOOD) believed to reside in the State of Michigan, was an agent, employee, and/or subcontractor of corporate Defendants CCS, and was responsible for providing medical care to Vladimir during his post-sentence detention at the Facility. At all material times, this Defendant was acting under color of state law.

30.     Defendant SARAH BREEN, LPN (hereinafter LPN BREEN) believed to reside in the State of Michigan, was an agent, employee, and/or subcontractor of corporate Defendants CCS, and was responsible for

providing medical care to Vladimir during his post-sentence detention at the Facility. At all material times, this Defendant was acting under color of state law.

31.     Defendant DIXIE DEBENE, LPN (hereinafter LPN DEBENE) believed to reside in the State of Michigan, was an agent, employee, and/or subcontractor of corporate Defendants CCS, and was responsible for providing medical care to Vladimir during his post-sentence detention at the Facility. At all material times, this Defendant was acting under color of state law.

32.     Defendant AMBER BARBER, LPN (hereinafter LPN BARBER) believed to reside in the State of Michigan, was an agent, employee, and/or subcontractor of corporate Defendants CCS, and was responsible for providing medical care to Plaintiff Vladimir Stojcevski during his post-sentence detention at the Facility. At all material times, this Defendant was acting under color of state law.

33.     Defendant LINDA PARTON, LPN (hereinafter LPN PARTON) believed to reside in the State of Michigan, was an agent, employee, and/or subcontractor of corporate Defendants CCS, and was responsible for providing medical care to Plaintiff Vladimir Stojcevski during his

17

post-sentence detention at the Facility. At all material times, this Defendant was acting under color of state law.

34.     Each of the afore-referenced individual LPNs identified immediately above had direct treatment contact with Vladimir, were aware of the numerous medical conditions from which Vladimir was suffering, and yet were deliberately indifferent to Vladimir's serious medical conditions caused by his incarceration, as detailed above, by: (a) failing to sufficiently recognize Vladimir's malnourishment, knowing that the detoxification process order by Defendant DR. SHERMAN would create a greater and more immediate need for proper food and fluid intake; (b) failing to recognize the signs and symptoms of the serious medical conditions, including infectious processes and sacral wounds that developed during Vladimir's incarceration; and (c) failing to adequately alleviate the serious risk of harm to Vladimir during their individual and collective time as mental health monitors.

35.     Defendant MACOMB COUNTY Corrections Officers include various corrections officers who worked as Mental Health Control Monitors, Mental Health Runners, and/or D-Block Runner, whose individual and collective responsibilities, duties, and obligations from June 17, 2014 to June 23, 2014 included: (a) personally attending to, and making daily and frequent contact

18

with up to 37 mental health inmates in 24 Mental Health cells (MH-01 to MH-24), including Vladimir; (b) watching video monitors of the inmates' activities taking place in five (5) mental health cells, including Vladimir's MH-02 and MH-03 cells; and (c) handwriting their personal observations in a Mental Health Log Book every fifteen (15) minutes regarding those five camera-monitored mental health cells.

36.     The video monitors are located in a secured dark tinted-glass Mental Health Duty Station, located directly across a five to six- foot wide hall from Vladimir's cell, thereby allowing visual observations into Vladimir's cells, both personally and via video monitor.

37.     The last names of said Corrections Officers (identified as CO and last name) who had the above-noted obligations included Defendants CO OXLEY, CO PINGELLEY, CO BLOUNT, CO HARRISON, CO DAVIS, and CO DEHATE. From June 17, 2014 to June 22, 2014, Defendants CO PINGELLEY, CO HARRISON, CO OXLEY, CO BLOUNT, CO HARRISON, CO DAVIS and CO DEHATE were responsible for either physically moving VLADIMIR from cell to cell within the Mental Health Unit, or were responsible for monitoring his actions via video monitor.

38.     Each of these named Corrections Officers had either direct personal

19

contact with Vladimir, or watched the video of Vladimir's incarceration as Vladimir lost at least 28-29 pounds, (between 17-18% of his total weight), suffered unnecessary pain and agony caused by the serious medical conditions he endured, and failed to eat sufficiently to sustain a healthy body weight and to fend off the infectious processes to which Vladimir was exposed in the unsanitary conditions of his housing. These Defendants were all deliberately indifferent to Vladimir's serious medical conditions caused by his incarceration and detailed above by: (a) failing to sufficiently monitor Vladimir's food and hydration intake; (b) failing to recognize the signs and symptoms of the serious medical conditions that developed during Vladimir's incarceration; and (c) failing to adequately alleviate the serious risk of harm to Vladimir during their individual and collective time as mental health monitors.

39.     Each of these COs named immediately above were aware, individually and collectively, of the serious medical, nutritional and hydration needs of Vladimir and were aware of the serious risk of harm to Vladimir, the awareness being demonstrated by: (a) the video they watched; (b) the personal contacts they had with Vladimir; and (c) the conversations that the various shift officers shared regarding those risks as each shift changed.

Notwithstanding their individual and collective knowledge of those risks, these Defendants were deliberately indifferent to Vladimir's plight, choosing to disregard those risks to Vladimir and causing Vladimir to needlessly suffer the symptoms of serious medical conditions identified and treated at McLaren Regional Center from June 23, 2014 to June 28, 2017.

40.     The actions by these Defendants named immediately above were deliberately indifferent to Vladimir's serious medical, nutritional, and hydration needs and the serious risk of harm suffered by Vladimir.

41.     The reckless, deliberate indifference of these six (6) corrections officers demonstrates the constitutionally deficient corrections training that these Defendants were provided by Defendant MACOMB COUNTY and Defendant SHERIFF WICKERSHAM, their supervisor and policy-maker for the Facility. The near complete failure of these corrections officers to react to an obvious, long-term risk of serious harm to Vladimir is an individual failure to act that was a highly obvious and predictable consequence of inadequate training by Defendant SHERIFF WICKERSHAM.

42.     These Defendants are believed to reside in the State of Michigan, were agents or employees of Defendant Macomb County, and were responsible for protecting Vladimir's constitutional right to be free from cruel and unusual

21

punishment during his post-sentence detention at the Facility. At all material times, these Defendants were acting under color of state law.

## IV.      FACTUAL ALLEGATIONS

### Facts Applicable to All Defendants

43.     Plaintiff restates and re-alleges the allegations contained in paragraphs 1 through 42 as though fully set forth herein.

44.     During the initial processing of Vladimir by the various jail personnel, certain facts and determinations were reached by the jail personnel and CCS employees or agents, by way of conversations with Vladimir, including but not limited to:

    a.      Vladimir's blood pressure was determined to be 110/84, his pulse rate was 64, respiratory rate was measured at 12, his temperature was 98.30, his height was 5' 6", and his weight was 165 pounds;

    b.      Vladimir had been prescribed Neurontin 600 mg TID, Klonopin 2mg TID, and Norco 5/325 mg (one) prior to incarceration, facts that were verified by jail personnel or CCS employees or agents;

    c.      Vladimir signed a Medication Verification/Medical Release form on June 11, 2014;

      d.      Vladimir was placed in Holding Cell No. 3 (HC3), was then transferred to a room commonly known as the "day room" for approximately 2 days, and on or about June 13, 2014 was placed in the Detoxification Unit of the Macomb County Jail, Detoxification Cells DC01 and DC02;

      e.      Suicide Potential Screening required no referral to MH (Mental Health) for suicide watch;

      f.      Vladimir's Mental Status included: Alert orientation, Affect appropriate, Logical thought processes, Speech Appropriate, Mood appropriate, Activity appropriate, and no Hallucinations. During the initial processing of Plaintiff Vladimir by various jail personnel, as well as CCS employees or agents, certain facts and determinations were reached by the jail personnel and CCS employees or agents, by way of conversations with Vladimir, including but not limited to:

45.    Vladimir's housing assignment remained in the Detoxification Unit until June 17, 2014, at approximately 8:34 a.m. Four hours later he was transferred to the Mental Health Unit, Cell MH02. He stayed housed there for three hours. He was then transferred to HOH2, and stayed there for 2 ½ hours. Vladimir was then moved to HOH1 and stayed there for about 26 ½ hours, i.e.

until about 8:53 p.m. on June 18, 2014.

46.     After a recommendation from MHP Brock to place Vladimir in a Mental Health Step Down unit, Vladimir was moved to a step-down cell in the Medical Unit at around 9:00 p.m. on June 18, 2014, and stayed in two different medical unit cells for about 3 days.

47.     From June 15, 2014 until June 20, 2014, an Alcohol or Sedative Hypnotic Withdrawal protocol was instituted for Vladimir.

48.     On June 19, 2014 Defendants, RN OLAGBAIYE and LPN PAVEY weighed VLADIMIR and learned that his weight was 136 pounds, or 29 pounds less than his recorded weight of 165 pounds from eight days prior during Vladimir's initial screening. This weight loss was significant and posed a serious risk of harm to Vladimir, and yet no action was taken by any of the individual RNs noted above or the LPNs noted above, even though the weight was recorded in Vladimir's Facility medical chart.

49.     On June 21, 2014, Vladimir was weighed again in the Medical Unit by RN OLAGBAIYE, and his weight was 137 pounds, or 28 pounds less than his weight on the day of incarceration, June 11, 2014. This weight loss was significant and posed a serious risk of harm to Vladimir, and yet no action was taken by any of the individual RNs noted above or the LPNs noted above,

24

even though the weight was recorded in Vladimir's Facility medical chart.

50.     On June 21, 2014, David was then moved to the Mental Health Unit, cell designated as MH-03. He stayed there until June 23, 2014 at 8:39 p.m., when he was then transferred to a jail cell designated as 8E09. In the early evening of June 23, 2014, Vladimir was transported to McLaren Regional

51.     From about June 11, 2014 through June 15, 2014 Vladimir had seizures accompanied by vomiting spells and bowel incontinence. By June 19, 2014, due to the Defendants' failures to make available outside medical care for Vladimir's serious medical needs, Plaintiff Vladimir Stojcevski lost 29 pounds during the eight days of incarceration to that time.

52.     On June 22, 2014, Plaintiff Vladimir was complaining of a "racing" heart beat. Defendant Bertram does not contact the physician. The blood work that was supposed to be done on June 20, 2014, which was finally done on June 23, 2014 showed a decreased potassium level of 3.3.

53.     From June 17, 2014 to June 22, 2014, Defendants CO PINGELLEY, CO HARRISON, CO OXLEY, CO BLOUNT, CO HARRISON, CO DAVIS and CO DEHATE were responsible for either physically moving VLADIMIR from cell to cell within the Mental Health Unit, or were responsible for monitoring his actions via video monitor.

25

54.    Notwithstanding Vladimir's numerous requests to be allowed to clean himself, and to examine his lower extremity for injury or disease, the afore-named nurses, LPNs PAVEY, DEVIEW, BERTRAM, GOOD, BRREN DEBENE, WILLIAMS, BREEN, DEBENE, BARBER and PARTON knew of the extremely unsanitary conditions existing in Vladimir's cell, and disregarded the serious risk of harm caused by those conditions, knowing that such unsanitary conditions can lead to, or contribute to, infectious processes developing or worsening to the point where hospitalization would be necessary for antibiotic control of those processes.

55.    Similarly, the afore-referenced COs, CO PINGELLEY, CO HARRISON, CO OXLEY, CO BLOUNT, CO HARRISON, CO DAVIS and CO DEHATE refused to allow Vladimir to properly wash his lower extremity and behind, and refused Vladimir adequate medical care, the refusals evincing the Defendants' deliberate indifference to Vladimir serious medical needs being exposed to a substantial risk of physical and mental harm related to all of Defendants refusals noted above.

56.    Vladimir had a known history of seizures with recent hospitalization for seizures. Upon incarceration, Defendants knew and verified that Vladimir had been prescribed Neurontin 600 mg. TID for control of his seizures.

57.     Defendant SHERMAN, with the above mentioned knowledge, chose to prescribe a less expensive medication, Dilantin. Although Dilantin is a medication that also controls seizures, Defendant SHERMAN failed to appropriately determine the correct dosage for David and failed to prescribe a loading dose for this new medication, contrary to CCS policies.

58.     For several days, and as a result of being refused the very basic request for medical care, and to cleanse his body to remove the vomit and feces from his upper and lower extremities, VLADIMIR suffered physical and mental injury, great indignity, embarrassment, and ridicule within the Macomb County jail inmates, as well as Defendants' employees and agents, as of yet unidentified, due to the dried, caked-on, or left-over feces caused by Defendants' refusal to allow Plaintiff to cleanse himself.

59.     On or about June 23, 2014, VLADIMIR's serious medical conditions, as fully documented in VLADIMIR's medical records from McLaren Medical Center, became so severe as to finally cause Defendants to send Vladimir to long-standing requests for medical care, and Defendant WICKERSHAM and Defendant CCS decided to take VLADIMIR from the jail on June 23, 2014 to the McLaren Regional Hospital for medical examination, many days after Vladimir demonstrated a need to attend to his

serious medical needs that could only be performed in a hospital setting. Vladimir's need for medical care became so urgent as to require transport of VLADIMIR to the medical center via a Defendant MACOMB COUNTY deputy squad car.

60.   Upon admission to the hospital, Plaintiff Vladimir Stojcevski was suffering from:

   a.   Systemic inflammatory response syndrome criteria with possible sepsis;

   b.   Acute peritoneal cellulitis;

   c.   Muscular edema secondary to infection versus inflammation of the bilateral gluteus maximus muscle group;

   d.   Acute encephalopathy, non-specific etiology;

   e.   Possible rectal mucosal tear secondary to anal rauma;

   f.   Leukocytosis (increased white blood cell count);

   g.   Acute intractable rectal and abdominal pain;

   h.   Sacral wound; and

   i.   Mild hypokalemia (low potassium).

**Facts Applicable to Macomb County Defendants**

61.   The unconstitutional conduct alleged herein was carried out in

28

accordance with the official policies, procedures, and customs of Defendant MACOMB COUNTY. Defendant MACOMB COUNTY maintained constitutionally deficient detention policies, practices and procedures, including but not limited to: (a) failing to provide sufficient and timely medical care and treatment to Vladimir that would have addressed Vladimir's serious medical needs and would have alleviated the unnecessary and wanton pain and suffering to Vladimir; (b) failing to respond to a known substantial risk of harm, infection, and other serious medical conditions that developed while he was incarcerated; (c) failing to maintain and implement policies, practices, procedures and protocols to assure Vladimir adequate nourishment and hydration, disregarding his obvious malnourishment, dehydration and extreme weight loss of between seventeen percent (17%) and eighteen percent (18%) of his total body weight of 165 pounds after only eight (8) days of incarceration at the Facility, the weight loss occurring during a five- day detoxification protocol implemented by Defendant DR. SHERMAN; (d) failing to monitor Vladimir's food and water intake sufficiently resulting in Vladimir's severe dehydration and weight loss that contributed to the need for hospitalization merely 12 days after his incarceration at the facility; (e) detaining Vladimir under inhumane and unsanitary conditions of confinement

29

without adequate access to sanitary needs for several days, thereby contributing to Vladimir's compromised physical state upon admission to McLaren Regional Hospital; (f) Macomb County Defendants Wickersham and Sanborn failing to accurately audit the facility during the Facility's self-assessment reviews provided to the Michigan Department of Corrections for the 2013 and 2014 calendar years; (g) Defendant CCS Medical Director, policy-maker, and Supervisor DR. LAWRENCE SHERMAN's (hereinafter DR. SHERMAN) failing to train or supervise his medical staff, including his nurse practitioner under his direct supervision, Defendant TEMITOPE OLADOKUN OLAGBAIYE, RN (hereinafter RN OLAGBAIYE), thereby resulting in Defendant OLAGBAIYE's inability to access infectious processes and nutritional deficits that exacerbated those processes, and resulting in VLADIMIR's suffering the serious medical conditions that required his hospitalization twelve (12) days after his incarceration; (h) Defendant DR. SHERMAN's failing to supervise and direct unskilled Macomb County corrections officers on how to adequately monitor Vladimir's food and water intake, as well as how to identify obvious and serious medical symptoms of malnourishment and dehydration, especially after Defendant DR. SHERMAN's institution of an alcohol or sedative

hypnotic withdrawal protocol; (i) Defendant DR. SHERMAN's reckless and deliberately indifferent delegation of his medical assessment and observational obligations to those unskilled and untrained corrections officers, thereby resulting in the highly predictable constitutional violations alleged herein; (j) Macomb County Defendants, CCS, and Individual Defendants, and Supervisory Defendants causing Vladimir to endure extreme and needless pain and suffering prior to his transfer to the hospital on June 23, 2014; Macomb County Defendants and CCS implementing, tolerating and consistently ratifying Defendants' customs and practices that constitutionally failed so miserably prior to Vladimir's admission to the hospital, including tolerating and acquiescing in CCS Defendants and Macomb County Defendants' unconstitutional deliberately indifferent conduct prior to, and during, Vladimir's incarceration that resulted in violations of David Stojcevski's constitutional right to be free from cruel and unusual punishment during his June, 2014 incarceration at the facility and Jennifer Lynne Meyers constitutional right to be free from cruel and unusual punishment during her June and July, 2013 incarceration at the facility; and (k) Defendant MACOMB COUNTY failed to adequately train and/or supervise its personnel and contracted-for providers with regard to complying with

constitutionally-minimal rights of confined persons to medical care for serious medical needs, food, water, and humane conditions of confinement.

62.     Defendant MACOMB COUNTY has also implemented a policy, and ratified said policy, of training Macomb County corrections' officers that "all the corrections officers could do" to fulfill their constitutional obligations under the Eighth Amendment pertaining to medical care for inmates' serious medical needs was to refer all medical problems to their designated contracted-for medical provider, Defendant CCS. This deliberate and mistaken training policy and practice was a moving force behind Defendant MACOMB COUNTY's failure to respond to Vladimir's serious medical condition in a meaningful and constitutionally consistent fashion-- including directly calling for emergency medical care in spite of the inadequate and insufficient medical care provided Vladimir, and/or going beyond the Corrections' Officers normal chain of corrections' command unit if the command officers continued to rely on CCS medical decisions that were not recognizing a serious risk of harm to an inmate such as Vladimir.

63.     Defendant MACOMB COUNTY failed to adequately train and/or supervise its personnel and contracted-for providers with regard to complying with constitutionally-minimal rights of confined persons to protection from

32

the serious risk of harm caused by an inmate's serious medical needs, thereby resulting in MACOMB COUNTY engaging in a pattern, practice, or custom of unconstitutional conduct toward confined persons such as Vladimir with serious medical and mental health needs. This included a pattern, practice, or custom of not securing medical care, or emergency care when necessary, on a timely basis, so as to alleviate an inmate's unnecessary pain. This included a pattern, practice, or custom of not securing medical care for detainees who are suffering from withdrawal, physical injuries, mental health crises, dehydration, malnourishment, or a combination of these serious medical or mental health conditions.

64.    In addition to the daily practices and customs of unconstitutional conduct toward Vladimir utilized and practiced on a serial and consistent basis against Vladimir during his thirteen (13) day incarceration, Defendants committed serial and consistent unconstitutional acts of deliberate indifference to Vladimir's brother, David Stojcevski, from June 11, 2014 to June 27, 2014, dates that were contemporaneous with the numerous unconstitutional violations visited upon Vladimir by the Defendants herein.

65.    Additionally, prior to Vladimir's and David's incarcerations, Defendant MACOMB COUNTY corrections officers, have previously

violated inmates 8th Amendment rights, as exemplified by Defendants' deliberate indifference to the serious medical needs of Decedent Jennifer Meyers, an inmate who died in the Facility approximately one year prior to David Stojcevski's death in Defendant's Facility due to Defendants' deliberate indifference to her serious medical needs.

66.     Defendant MACOMB COUNTY contracted with the Corporate Defendant to provide medical care and services to inmates at the Facility. Defendant MACOMB COUNTY had the power and the ability to monitor the contract performance of the Corporate Defendant, and the duty to nsure that jail inmates received constitutionally adequate medical care.

67.     Upon information and belief, under the contract, Defendant MACOMB COUNTY could take corrective action to ensure compliance with constitutional standards and could terminate the agreement or any corporate medical providers who were not meeting the constitutionally-protected medical needs of the inmates. Defendant MACOMB COUNTY did not adequately monitor the performance of the Corporate Defendant and allowed the Corporate Defendant's ongoing practice of substandard medical care and mental health care to continue, putting the lives of its inmates at risk.

68.     Defendant MACOMB COUNTY knew, or should have known, due to

the obviousness of the likely serious harm to the incarcerated inmates, that the policies, practices and customs referenced herein posed a substantial risk of serious harm to inmates like Vladimir, David, and Jennifer Meyers. Nevertheless, the Defendants failed to take reasonable steps to alleviate the risk of serious harm. There is an affirmative causal link between the Defendants' afore-referenced deliberate indifference and the policies, practices, and customs described herein.

69. Defendant MACOMB COUNTY and Defendant SHERIFF WICKERSHAM, ratified the unconstitutional conduct of its employees and/or agents, failed to sufficiently investigate the previous constitutional violations, and in the process of disclosing information through Freedom of Information Act requests by Plaintiff, did destroy, conceal, and/or fail to produce relevant video evidence of Vladimir's incarceration from June 11, 2014 to June 24, 2014. These actions by Defendants are contrary to Vladimir's constitutional right to access to this federal court may limit or harm the remedies available to Plaintiff in this litigation.

70. Defendant MACOMB COUNTY knew that the aforementioned policies, practices, and customs posed a substantial risk of serious harm to detainees like Vladimir, and it was obvious that such harm would occur.

Nevertheless, such defendants failed to take reasonable steps to alleviate those risks of harm while Vladimir was incarcerated in the facility in June, 2014, and failed to alter or modify daily procedures and practices to assure that such unconstitutional practices were not tolerated in the future.

71.    The actions and inactions of Defendant MACOMB COUNTY were done under color of state law and were the direct and proximate cause of Vladimir's pain and suffering, death, and all other damages alleged herein.

72.    All acts or omissions committed by the Defendant MACOMB COUNTY were done under color of state law.

73.    All acts or omissions committed by the Defendant MACOMB COUNTY were the direct and proximate cause of Vladimir's damages.

74.    All acts or omissions committed by Defendant MACOMB COUNTY were committed with malice or with reckless disregard for Vladimir's constitutional rights.

75.    Defendant MACOMB COUNTY ratified the unconstitutional conduct of its employees, agents, and/or subcontractors with regard to the unconstitutional conduct visited upon Vladimir by continuing the same practices, policies and customs that caused Vladimir's injuries. This continued use of the same practices, policies and customs that resulted in the

constitutional violations alleged here, without any material change in the CCS Defendant practices and customs was acknowledged by Defendant policy-makers and supervisors, Defendant SHERIFF WICKERSHAM and Defendant SANBORN by their joint submission of the previously described Facility Self-Audits that failed to fully disclose to the State of Michigan that those same policies, procedures and practices maintained by the Facility, caused the unconstitutional violations that resulted in the death of David in June 2014, Jennifer Lynne Meyers death in July, 2013, and the unconstitutional and deliberately indifferent acts against Vladimir Stojcevski that caused serious injury to him in June, 2014.

76. Submission of the Facility Self-Audit, after what appears to have been a thorough examination by Defendant SHERIFF WICKERSHAM and Defendant SANBORN, evinced a tolerance to, acquiescence in, and ratification of the unconstitutional actions of Macomb County corrections officers, command officers, and Defendant CCS personnel contracted by Defendant Macomb County to provide medical care and other services to its population of inmates prior to David's death.

### Facts applicable to Corporate Defendant, CCS

77. The Corporate Defendant maintained unconstitutional policies,

37

procedures, and customs.   These include (1) unconstitutional policies and procedures for managing individuals who were suffering the obvious signs and symptoms of the afore-described conditions, as well as the symptoms related to malnutrition and related symptoms of those conditions that caused Vladimir's damages; (2) constitutionally inadequate policies and procedures related to communication within its medical unit, as well as its policies related to communications between its medical providers and Defendant MACOMB COUNTY corrections' personnel regarding inmates who are at risk of suffering severe infectious processes as the symptoms related to malnutrition and related symptoms of those conditions that caused Vladimir's damages.

78.   The Corporate Defendant failed to adequately train and/or supervise their personnel, agents and or subcontractors with regard to complying with constitutionally-minimal rights of confined persons to medical care, food, and water. This includes its deliberate choice not to provide training on the subject of dehydration and malnourishment.

79.   The Corporate Defendant engaged in a pattern, practice, or custom of unconstitutional conduct toward confined persons such as Vladimir with serious medical and mental health needs. This includes the corporate Defendants pattern, practice, or custom of: (a) failing to secure medical care

38

for inmates, notwithstanding Vladimir's obvious suffering; and (b) deliberately and intentionally ignoring requests made by Defendant Macomb County corrections' officers to provide appropriate and needed medical treatment for Vladimir's serious medical needs.

80.    At the time of Vladimir's incarceration on June 11, 2014, and concurrent with his incarceration until Vladimir's transfer to the hospital on June 23, 2014, there were instances of this Corporate Defendant depriving inmates at the Macomb County Jail of needed medical care by the corporate Defendant and their agents and employees as a result of the deliberately indifferent corporate customs and practices described herein. The unconstitutional conduct thereby resulted in the infliction of unnecessary pain and suffering on the inmates, including prior Facility inmates such as Jennifer Lynne Meyers, and David Stojcevski, who were incarcerated contemporaneously with Vladimir, or prior to his incarceration.

81.    The Corporate Defendant ratified the unconstitutional conduct of its employees, agents, and/or subcontractors with regard to the unconstitutional conduct visited upon Vladimir by continuing the same practices, policies and customs that caused Vladimir's damages.

82.    All acts or omissions committed by the Corporate Defendant were done

39

under color of state law.

83.     All acts or omissions committed by the Corporate Defendant were the direct and proximate cause of Vladimir's damages.

84.     All acts or omissions committed by the Corporate Defendant were committed with malice or with reckless disregard for Vladimir's constitutional rights.

### Facts Applicable to Individual Defendants with Supervisory Authority

85.     Certain individual defendants named in this lawsuit played a supervisory role over individuals (including, but not limited to, the nursing staff, mental health staff, and correctional officers identified as Defendants in this litigation.) Those individuals are Defendants HSA ARFT, DR. SHERMAN, and RN CUENY, all of whom were employed by CCS and working at the Macomb County Jail between June 11, 2014 and June 23, 2014, the date Vladimir was transferred emergently to the hospital.  Only Defendant HSA ARFT and DR. SHERMAN were, in addition to supervisors, policy makers by virtue of their review, application, and/or modification of Corporate CCS policies to fit the needs of the Macomb County Jail.

86.     Additionally, the individual Defendant SHERIFF WICKERSHAM had supervisory responsibilities over corrections officers during the time period in

question.

87.    As policy makers for the Facility in 2013 and 2014, Defendant SHERIFF WICKERSHAM and Defendant SANBORN, jointly prepared, approved, and submitted the Facility's Self Audits that confirmed and demonstrated Defendants WICKERSHAM and Defendant SANBORN's extensive and all-encompassing knowledge of the Facility's operations, including the Facility's policies, procedures and practices related to operations in the correctional, mental health and medical departments of the Facility. In those Self-Audits, Defendants SHERIFF WICKERSHAM, individually and in his official capacity, and SANBORN, in her official capacity, failed to fully disclose to the State of Michigan that those same policies, procedures and practices maintained by the Facility, caused the unconstitutional violations that resulted in the death of David Stojcevski in June 2014, Jennifer Lynne Meyers in July, 2013, and caused serious injury to Vladimir Stojcevski in June, 2014.

88.    Defendants SHERIFF WICKERSHAM and SANBORN thereby acquiesced in, and ratified the unconstitutional actions of Macomb County corrections officers, command officers, and Defendant CCS personnel contracted by Defendant MACOMB COUNTY to provide medical care and

other services to its population of inmates. It also includes Defendant SHERIFF WICKERSHAM (in his individual capacity), and any other named (or as of yet unidentified) defendants who had supervisory responsibilities over other jail personnel working at the Macomb County Jail during the time period in question.

89. Defendant SHERIFF WICKERSHAM, in his individual capacity, either actively participated in the conduct described in this complaint or he acquiesced in the constitutionally offensive conduct by personally directing it, tacitly authorizing it, or otherwise failing to train or supervise his subordinates thereby giving rise to individual supervisory liability for the constitutionally offensive conduct and the constitutional deprivations alleged herein.

90. The actions and inactions of Defendant ANTHONY WICKERSHAM, who played a supervisory role were deliberate and intentional, caused Vladimir's damages, and were committed with malice or reckless disregard for Vladimir's constitutional rights.

91. Defendant DR. SHERMAN was the Chief Medical Director of the Facility, and is believed to reside in the State of Michigan, and at all times relevant to this lawsuit was an agent, employee, and/or subcontractor of corporate Defendant CCS or Macomb County. As Medical Director of the

facility, DR. SHERMAN was a policymaker for CCS who developed and implemented policies, practices, procedures, and protocols for the Facility by reviewing corporate policies, procedures, and protocols, and approving same to meet the Facility's needs. Defendant DR. SHERMAN also saw inmates, oversaw their medical care so as to, inter alia: ensure that inmates such as Vladimir received emergency medical care for emergent medical conditions; ensure that inmates such as Vladimir received adequate nutrition and hydration consistent with DR. SHERMAN's obligation to provide medical treatment to inmates such as Vladimir for serious medical needs; ensure that inmates such as Vladimir received individualized medical treatment that reflected medical decision-making; implement practices, policies and procedures that would not promote, allow, or tolerate unconstitutional violations of inmates such as Vladimir's right to be provided care for their serious medical needs, their right to be free from unnecessary and wanton pain and suffering caused by those violations, and their right to be free from a serious risk of harm. At all material times, this defendant was acting under color of state law.

92.     As a supervisor of DEFENDANT RN OLAGBAIYE, Defendant DR. SHERMAN failed to train or supervise Defendant OLAGBAIYE thereby

giving rise to individual supervisory liability for the constitutionally offensive conduct and the constitutional deprivations alleged herein. These actions and inactions of Defendant DR. SHERMAN caused Vladimir's damages, and were committed with malice or reckless disregard for Vladimir's constitutional rights.

93.    As the Health Service Administrator, HSA DAVID ARFT, RN (hereinafter HSA ARFT) was a policy-maker for CCS and a supervisor of the Director of Nursing, Defendant CUENY. In those dual roles, Defendant HSA ARFT was responsible for: (a) developing and implementing policies, practices, procedures and protocol for the Facility by taking corporate policies, reviewing them, and modifying the policies and procedures to meet the Facility's needs, Macomb County Jail; (b) overseeing and directing Defendant CUENY to assure that the tailored policies and procedures of the Facility were maintained and consistently implemented so as protect the constitutional rights of Vladimir, and other inmates at the Facility, including, inter alia: the inmates' rights to emergency medical care for emergent conditions, adequate nutrition and dehydration; the inmates' right to continuity of care supported by accurate and timely record keeping; the inmates' rights to adequate  communication of medical and mental health

concerns and assessment amongst and between CCS medical and mental health personnel and Defendant Macomb County corrections officers and command officers; and the inmates' right to be protected from unnecessary wanton pain and suffering.

94.    Defendant HSA ARFT failed to train or supervise RN CUENY, causing RN CUENY to violate Vladimir's constitutional rights as enunciated herein, thereby giving rise to individual supervisory liability for the constitutionally offensive conduct and the constitutional deprivations alleged herein.

95.    These actions and inactions of Defendant HAS ARFT caused Vladimir's damages, and were committed with malice or reckless disregard for Vladimir's constitutional rights. At all material times, this defendant was acting under color of state law.

96.    Defendant RN CUENY failed to train or supervise the various LPNs identified above, causing those named nursing professionals to violate Vladimir's constitutional rights as enunciated herein, thereby giving rise to individual supervisory liability for the constitutionally offensive conduct and the constitutional deprivations alleged herein.

97.    These actions and inactions of Defendant RN CUENY caused

Vladimir's damages, and were committed with malice or reckless disregard for Vladimir's constitutional rights. At all material times, this defendant was acting under color of state law.

## COUNT I:
## VLADIMIR STOJCEVSKI
## VIOLATION OF 42 U.S.C. SECTION 1983 AND THE
## 8TH AMENDMENT OF THE UNITED STATES CONSTITUTION

98.    Plaintiffs restate and re-allege the allegations contained in paragraphs 1 through 97 as though fully set forth herein.

99.    At all times relevant hereto, all Defendants identified herein were acting within the course and scope of their employment with the County of Macomb and/or CCS and were acting under color of state law with the authority granted to them as corrections officers or correctional healthcare providers and/or managers and/or shift supervisors.

100.    CCS, Defendant MACOMB COUNTY, and the afore-referenced Individual Defendants unconstitutional and deliberately indifferent actions, individually and/or collectively, contributed to or caused the unnecessary and wanton pain and suffering to Vladimir are detailed as follows.

101.    CCS, Defendant MACOMB COUNTY, and the afore-referenced Individual Defendants failed to provide sufficient and timely care and treatment to Vladimir that would have addressed Vladimir's serious medical

46

and/or mental health needs and would have alleviated the unnecessary and wanton pain and suffering to Vladimir.

102.   CCS, Defendant MACOMB COUNTY, and the afore-referenced Individual Defendants failed to individually monitor Vladimir's deteriorating medical health and to respond accordingly.

103.   CCS, Defendant MACOMB COUNTY, and the afore-referenced Individual Defendants ignored and/or disregarded Vladimir's obvious need for medical treatment and for sufficient nutrition and hydration, especially considering implementation of a withdrawal protocol.

104.   CCS, Defendant MACOMB COUNTY, and the afore-referenced Individual Defendants failed to respond to a known substantial risk of harm to Vladimir, the knowledge of said risk of harm being obvious even to a lay person.

105.   CCS, Defendant MACOMB COUNTY, and the afore-referenced Individual Defendants failed to maintain and implement policies or practices that assured Vladimir adequate nourishment and hydration despite his own inability to meet those essential needs, disregarding his obvious malnourishment, dehydration and extreme weight loss of between seventeen percent (17%) and eighteen percent (18%) of his total body weight of 165

47

pounds confirmed by Defendants' staff at booking, and failing to monitor Vladimir's food and water intake sufficiently resulting in Vladimir's severe dehydration and weight loss that contributed to or caused his damages.

106. CCS, Defendant MACOMB COUNTY, and the afore-referenced Individual Defendants detained Vladimir under inhumane conditions of confinement, under unsanitary incarceration conditions that exacerbated and/or created serious medical conditions as detailed above.

107. CCS, Defendant MACOMB COUNTY, and the afore-referenced Individual Defendants created and tolerated insufficient communication systems, practices and customs between Defendant CCS medical staff, and Defendant MACOMB COUNTY corrections officers, thereby resulting in the Defendants' disregard of obvious medical health cues that increased the risk of serious harm to Vladimir.

108. Defendant ANTHONY WICKERSHAM and Defendant SANBORN failed to accurately audit the facility during the Facility's self-assessment reviews provided to the Michigan Department of Corrections for the 2013 and 2014 calendar years;

109. CCS Defendant policy-makers and Macomb County policy-makers ratified their employees' unconstitutional actions without disciplinary

48

changes or making any measurable and meaningful changes in policies and practices that resulted in Vladimir's injuries.

110. Defendant HSA ARFT, as policy-maker and supervisor of CCS's Nursing Staff, failed to train Defendant Acting Medical Director Defendant CUENY to such an extent as to cause Defendant CUENY to have little, if any working knowledge of her supervisory obligations as Acting Director of Nursing at the Facility, thereby resulting in the Defendant CCS's Nursing Staff's individual and collective pervasive, obvious, and highly predictable constitutional violations as alleged herein.

111. Defendant DR. SHERMAN's failed to train or supervise unskilled Macomb County corrections officers on how to adequately monitor Vladimir's food and water intake, as well as how to identify obvious and serious medical symptoms of malnourishment and dehydration and how to provide individualized nursing care to inmates such as Vladimir so as to avoid unnecessary pain and suffering to Vladimir and other inmates.

112. DR. SHERMAN's reckless and deliberately indifferent delegation of his medical assessment and observational obligations to those unskilled and untrained corrections officers resulted in the highly predictable constitutional violations alleged herein.

113.   Defendant CUENY's failed to train or supervise CCS nursing staff, as identified herein, on how to adequately monitor Vladimir's food and water intake, how to provide individualized nursing care to inmates such as Vladimir so as to avoid unnecessary pain and suffering to Vladimir and other inmates, and how to adequately document their nursing care so as to provide crucial continuity of care to Vladimir and other inmates.

114.   Defendant CUENY's deliberately indifferent delegation of her and Defendant CCS nursing staff's medical obligations relating to Vladimir's food and water intake to unskilled and untrained corrections officers resulted in the Defendant CCS's Nursing Staff's individual and collective pervasive, obvious, and highly predictable constitutional violations alleged herein.

115.   CCS, Defendant MACOMB COUNTY, and the afore-referenced Individual Defendants caused Vladimir to endure extreme and needless pain and suffering;

116.   CCS, Defendant MACOMB COUNTY, and the afore-referenced Individual Defendants implemented, tolerated and consistently ratified Defendants' customs and practices that were the moving force behind CCS Defendants and Macomb County Defendants' unconstitutional deliberately indifferent conduct prior to Vladimir's incarceration that resulted in violations

of prior inmates' constitutional rights, including but not limited to David Stojcevski and Jennifer Lynne Meyers, whose injuries and death were caused by Defendants' unconstitutional customs and practices occurring prior to Vladimir's damages.

117. At all times relevant hereto, all Defendants identified herein were acting within the course and scope of their employment with the County of Macomb and/or CCS and were acting under color of state law with the authority granted to them as corrections officers or correctional healthcare providers and/or managers and/or shift supervisors.

118. At all times relevant hereto, pursuant to the Eighth Amendment of the United States Constitution, Plaintiff had a right to be free of cruel and unusual punishment, to be incarcerated in humane housing conditions that provided Vladimir sufficient food and hydration so as to prevent Vladimir from being exposed to unnecessary harm or serious risk of harm, and to receive proper and adequate medical care while incarcerated and under the custody and control of Defendant MACOMB COUNTY at the Macomb County Jail and under the supervision and control of the Defendants.

119. At all times relevant hereto, Vladimir had a right to adequate and sufficient medical care and treatment such that his medical and mental

conditions would be protected, and that Vladimir at all times would be free from needless unjustified and preventable pain, suffering and deterioration of their health and well-being.

120.  At all times relevant hereto, Defendants' actions cited above evinced malice, recklessness, and a callous and deliberate indifference to Vladimir's federally protected rights to be free of cruel and unusual punishment and to medical care that adequately treated Vladimir's serious medical needs, knowingly allowed Vladimir to suffer without adequate nourishment, fluids, without necessary medication, and without appropriate medical/mental health care, all of which combined in whole or in part to cause pain, suffering, deterioration of health of Vladimir, that took place over the time frame noted above.

121.  The Defendants identified above specifically and with deliberate indifference refused to provide the very basics of life to Vladimir, including nutrition and sanitary living conditions, during the time frame noted above, notwithstanding the Defendants' knowledge of the obvious and excruciating pain being suffered by Vladimir.

122.  The actions cited above violated a clearly established constitutional rights of which all Defendants were aware or should have been aware,

namely, inter alia, the long-established right to be free of cruel and unusual punishment and the right to medical care that adequately treated Vladimir's serious medical needs.

123.   The Defendants who had contact, whether by video surveillance or by personal contact with Plaintiff Vladimir, failed to communicate information to supervisors and others in charge of the care and custody of Vladimir concerning his medical and living conditions in his cell.

124.   The actions of the Defendants, created a substantial risk of harm to the health and safety of Vladimir.

125.   The Defendants, on numerous occasions, failed to obtain, summon or follow through with requests for medical care and treatment after observing obvious signs and symptoms of withdrawal, dehydration, and starvation/anorexia suffered by Vladimir.

126.   Many days prior, and shortly before Vladimir's transfer to the hospital on June 23, 2014, Vladimir was experiencing a medical emergency, brought upon by the conditions identified above. During the time that Vladimir's health continued to deteriorate, the various Defendants, pursuant to the Eighth Amendment, were required to provide and/or obtain adequate medical care for Vladimir, including, but not limited to appropriate medications,

electrolyte replacement, increased fluid intake, increased salt intake, intravenous re-hydration, cardiac monitoring and/or hospitalization.   To the contrary, however, the various Defendants with malice, recklessness and callous and deliberate indifference failed to provide or obtain care and treatment.

127.   The actions and/or omissions of the various Defendants noted above constituted a deliberate indifference to the serious medical needs of Vladimir and demonstrate a reckless, willful and wanton disregard for the health and safety of Vladimir thereby denying Plaintiff the constitutional right to be free from cruel and unusual punishment as provided by the Eighth Amendment to the United States Constitution.

128.   As the direct and proximate result of the actions and/or omissions of the Defendants, Vladimir suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation and suffering.

129.   As the direct and proximate result of the acts and/or omissions of the various Defendants, Plaintiff Estate has sustained and are entitled to compensation for the following damages, including, but not limited to:

a.   Reasonable medical, hospital, funeral, and burial expenses;

b.   Economic costs and/or damages (past, present and future);

c.    Loss of love;

d.    Reasonable compensation for the conscious pain and suffering experienced by Vladimir while he was conscious during incarceration;

e.    Loss of financial support;

f.    Loss of service;

g.    Loss of gifts or other valuable gratitude's;

h.    Loss of sibling companionship and guidance;

i.    Loss of expected inheritance;

j.    Loss of society and companionship; and

k.    Any and all other damages identified through the course of discovery otherwise available under Michigan Wrongful Death Act, MCLA § 600.2922.

130.  By the aforementioned actions and/or omissions, Defendants have deprived Vladimir of the rights secured by the Eighth Amendment to the United States Constitution and of 42 U.S.C. § 1983.

WHEREFORE, Vladimir Stojcevski, respectfully requests that this Honorable Court enter judgment in Plaintiffs favor and against Defendants who had personal contact with Plaintiff, or who had visual contact with Vladimir through video observation, as follows:

A.    Compensatory non-economic and economic damages in excess of $75,000.00, including but not limited to all damages recoverable under the United States Constitution and/or 42 U.S.C. § 1983 and/or the laws of the State of Michigan including but not limited to the Michigan Wrongful Death Act;

B.    Punitive damages;

C.    Reasonable attorney fees, costs and interest; and

D.    Such other and further relief as appears reasonable and just under the circumstances.

## COUNT II
## VLADIMIR STOJCEVSKI
## FAILURE TO TRAIN, CONSTITUTIONALLY DEFICIENT PROCEDURES, PRACTICES AND PROTOCOL AND FAILURE TO SUPERVISE-DELIBERATE INDIFFERENCE - MACOMB COUNTY, SHERIFF WICKERSHAM, SANBORN, CCS, DR. SHERMAN, HSA ARFT, AND RN CUENY

131.   Plaintiffs restate and re-allege the allegations contained in paragraphs 1 through 130 as though fully set forth herein.

132.   Pursuant to 42 U.S.C. §1983, Defendants CCS, DR. SHERMAN, HSA ARFT, RN CUENY, MACOMB COUNTY, and SHERIFF WICKERSHAM, owed Vladimir certain duties to properly supervise, monitor and train its correctional officers, medical staff, nursing staff, and

mental health staff so as to monitor the jail's inmates such as Vladimir, so that

the corrections, medical, nursing and mental health staffs would detect serious

medical conditions and facilitate prompt and immediate medical, nursing, or

mental health attention and/or transport to a hospital Emergency Room.

133.   That Defendants CCS, DR. SHERMAN, HSA ARFT, RN CUENY,

MACOMB COUNTY, SHERIFF WICKERSHAM, and SANBORN in their

representative and official capacities, have implemented and maintained

various policies, practices, procedures and protocols, as detailed throughout

this Complaint, that had a direct causal link to the unconstitutional federal

rights violations that caused Vladimir's damages alleged herein.

134.   Defendants CCS, DR. SHERMAN, HSA ARFT, RN CUENY,

MACOMB COUNTY, SHERIFF WICKERSHAM and SANBORN are not

protected by governmental immunity when following policies as stated above

that deprives individuals of their constitutional rights. *Monell v N.Y. City*

*Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).

135.   Defendants CCS, DR. SHERMAN, HSA ARFT, RN CUENY,

MACOMB COUNTY, SHERIFF WICKERSHAM and SANBORN were

aware of previous incidents where individuals who were incarcerated at the

Macomb County Jail were not afforded proper medical treatment, mental

health treatment, and/or nursing care.

136. Defendants CCS, DR. SHERMAN, HSA ARFT, RN CUENY, MACOMB COUNTY, and SHERIFF WICKERSHAM were aware of some or all of the policies, practices, procedures and protocols cited above.

137. Defendants CCS, DR. SHERMAN, HSA ARFT, PACITTO, RN CUENY, MACOMB COUNTY, SHERIFF WICKERSHAM owed Vladimir the following duties and obligations:

    a.    To use due care and caution;

    b.    To adequately and properly promulgate guidelines and policies that comply with the requirements of 42 U.S.C. § 1983 regarding the incarceration of inmates and the training and supervision of inmates, especially those who are mentally and emotionally and physically unstable, or those who are taking prescribed medication for pre-existing drug-dependency conditions, psychiatric or psychological problems;

    c.    To adequately and properly train and supervise deputies and employees, agents or representative of the Macomb County Jail under their supervision on the proper method of supervising prisoners and providing for their medical needs and on effectively controlling prisoners who have or are suspected of suffering from pre-existing drug-dependency conditions

58

requiring medications, or who are suffering psychological or psychiatric problems;

d.     To avoid hiring or selecting individuals who it knows or should know are incapable of performing their responsibilities or who are so deliberately indifferent to inmates medical and mental health conditions so as to make rash and irresponsible conclusions without basis in fact pertaining to inmates' presented symptoms.

f.     To not create by action or inaction, the afore-referenced policies, practices and procedures that would lead to violations of inmates' constitutional rights, including those of Plaintiff Vladimir Stojcevski, as enumerated herein.

138.   Defendants CCS, DR. SHERMAN, HSA ARFT, RN CUENY, MACOMB COUNTY, and SHERIFF WICKERSHAM breached these duties via their policies, practices, and procedures, and/or lack of training, and thus exhibited a reckless indifference toward its prisoners and Vladimir specifically in the innumerable ways as alleged herein.

139.   Defendants CCS, DR. SHERMAN, HSA ARFT, RN CUENY, MACOMB COUNTY, and SHERIFF WICKERSHAM trained their officials and/or employees and agents in such a reckless and grossly negligent matter,

that it was inevitable that the employees and agents would provide such inadequate care to an inmate such as Vladimir so as to violate his constitutional rights described herein.

140. Defendants, CCS, DR. SHERMAN, HSA ARFT, RN CUENY, MACOMB COUNTY, and SHERIFF WICKERSHAM failure to provide training and supervision regarding the proper care of inmates amounts to deliberate indifference to the safety and lives, and serious medical and mental health needs, of the inmates in the Macomb County Jail and particularly Vladimir.

141. Defendants SHERIFF WICKERSHAM, HSA ARFT, DR. SHERMAN, and RN CUENY were supervisory officials who knew, or in the exercise of reasonable care, should have known that individual prison officials had engaged in misconduct and other violations of the constitutional rights of prison inmates at the Macomb County Jail.

142. Despite knowledge of Defendant CCS and Defendant, MACOMB COUNTY aforesaid unconstitutional and deliberately indifferent policies, practices and procedures, Defendants SHERIFF WICKERSHAM, SANBORN, HSA ARFT, DR. SHERMAN, and RN CUENY failed to properly investigate the improper practices and to supervise and train the

employees of Defendant CCS and MACOMB COUNTY.

143. Defendants SHERIFF WICKERSHAM, HSA ARFT, DR. SHERMAN, and RN CUENY developed a "hands off" policy or custom with regard to the omissions of individual prison officials which encouraged the Individual Defendants identified herein to believe they could violate the constitutional rights of Vladimir with the explicit or tacit approval of the Defendants herein.

144. Defendants MACOMB COUNTY, SHERIFF WICKERSHAM, and Defendants CCS, HSA ARFT, DR. SHERMAN, and RN CUENY acting under color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices, and procedures, as listed throughout Plaintiff's Complaint, thereby establishing a de facto policy of deliberate indifference to Plaintiff's constitutionally protected rights.

145. As a direct and proximate result of the above cited violations of Vladimir's civil rights by Defendants, and as a direct and proximate result of these policies, practices, and customs, Vladimir Stojcevski has sustained and is entitled to compensation for the following damages, including, but not limited to:

    a.    Reasonable medical, hospital, funeral, and burial expenses;

b.    Economic costs and/or damages (past, present and future);

c.    Loss of love

d.    Extreme conscious pain and suffering undergone by Vladimir while he was incarcerated;

e.    Loss of financial support;

f.    Loss of service;

g.    Loss of gifts or other valuables;

h.    Loss of sibling companionship and guidance;

i.    Loss of expected inheritance;

j.    Loss of society and companionship; and

k.    Any and all other damages identified through the course of discovery otherwise available under the Michigan Wrongful Death Act, MCLA 600.2922.

WHEREFORE, Vladimir Stojcevski, respectfully requests that this Honorable Court enter judgment in Plaintiff's favor and against Defendants, for the following relief:

A.    Compensatory non-economic and economic damages in excess of $75,000.00, including but not limited to all damages recoverable under the United States Constitution and/or 42 U.S.C. § 1983 and/or the laws of

the State of Michigan including but not limited to the Michigan Wrongful Death Act;

    B.    Punitive damages;

    C.    Reasonable attorney fees, costs and interest; and

    D.    Such other and further relief as appears reasonable and just under the circumstances.

## COUNT III:

### VLADIMIR STOJCEVSKI
### GROSS NEGLIGENCE, INTENTIONAL, WILLFUL AND WANTON CONDUCT

146.   Plaintiffs restate and re-allege the allegations contained in paragraphs 1 through 145 as though fully set forth herein.

147.   At all times relevant hereto, Vladimir was incarcerated at the Macomb County Jail and at all times the individual Defendants identified above, or who had personal contact with Plaintiff Vladimir, or by way of visual observation, were acting and/or interacting with Vladimir within the scope of their employment as employees and/or agents of Defendant MACOMB COUNTY, at the Facility.

148.   At all times relevant hereto, the Michigan Constitution, Michigan statutes and/or Michigan common law, and the special relationship that

existed between Vladimir and the afore-referenced Defendants, required Defendants to provide Vladimir adequate medical care, mental health care, and nursing care or treatment, and to act with ordinary care for the safety of Vladimir.

149.   Defendants identified above who had personal contact with Plaintiff Vladimir, or by way of visual observation had contact with him, breached their duties by acting with gross negligence, as defined in MCL 691.1407(2)(c), and with recklessness, intentionality, and willful wantonness and deliberate indifference as to whether harm to Vladimir would result by keeping Vladimir in a cell or holding area without adequate nourishment, fluids or means of re-hydration, and delaying necessary medical care, all of which, in whole or in part, and in combination with Defendants actions detailed in this Complaint, caused serious harm, excruciating pain and suffering to Vladimir.

150.   At all times relevant hereto, the individually named Defendants were grossly negligent in one or more of the following ways:

a.    Failing to adequately screen and classify Vladimir;

b.    Falsifying documents or failing to complete documentation;

c.    Failing to care for the basic medical and mental health needs of

inmates, specifically Vladimir;

d.   Failing to confirm and procure Vladimir's prescribed medications;

e.   Failing to make a referral to the appropriate mental health services so that proper care and treatment could be administered to Vladimir;

f.   Failing to treat Vladimir's deteriorating mental/physical state by seeking immediate medical attention or to transfer him to a hospital/mental facility;

g.   Failing to provide for appropriate and reasonable medical and/or mental treatment of inmates, specifically Vladimir;

h.   Failing to provide an adequate number of deputies/correction officers/ medical personnel/mental health personnel and nursing personnel for inmate supervision, specifically Vladimir, due to jail over-crowding issues that Defendants CCS, MACOMB COUNTY, and WICKERSHAM were well aware;

i.   Failing to screen deputies/correction officers/medical personnel/mental health personnel/nursing staff to confirm their competency and satisfactory performance, both before and after

65

being engaged;

j. Failing to monitor, train discipline or control correction officers, medical personnel and nursing staff after derelictions in their performance became known, or should have become known;

k. Failing to refrain from intentionally denying or delaying access to appropriate medical care/mental health care/nursing care, specifically to Vladimir;

l. Acting with gross negligence, deliberate indifference or willful disregard of Vladimir's constitutional rights, as stated herein;

m. Failing to readily identify Vladimir's excessive weight loss during his incarceration, and to respond accordingly;

n. Failing to document medical/nursing/mental health encounters with Vladimir to ensure continuity of care;

o. Any and all other breaches that become known during the course of discovery.

151. As the direct and proximate result of the above cited grossly negligent violations of Vladimir's civil rights by Defendants, Vladimir Stojcevski has sustained and is entitled to compensation for the following damages, including, but not limited to:

a.   Reasonable medical, hospital, funeral, and burial expenses;

b.   Economic costs and/or damages (past, present and future);

c.   Loss of love

d.   Extreme conscious pain and suffering undergone by Vladimir while he was incarcerated;

e.   Loss of financial support;

f.   Loss of service;

g.   Loss of gifts or other valuables;

h.   Loss of sibling companionship and guidance;

i.   Loss of expected inheritance;

j.   Loss of society and companionship; and

k.   Any and all other damages identified through the course of discovery otherwise available under the Michigan Wrongful Death Act, MCLA § 600.2922.

WHEREFORE, Vladimir Stojcevski, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, for the following relief:

A.   Compensatory non-economic and economic damages in excess of $75,000.00, including but not limited to all damages recoverable under

the laws of the State of Michigan including but not limited to the Michigan Wrongful Death Act;

B.   Compensatory and/or punitive damages;

C.   Reasonable attorney fees, costs and interest; and

D.   Such other and further relief as appears reasonable and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury in the instant matter.

Respectfully submitted,

By: /s/ Robert D. Ihrie P26451
　　Robert D. Ihrie (P26451)
　　/s/ Harold A. Perakis P35921
　　Harold A. Perakis (P35921)
　　Attorneys for the Plaintiffs
　　24055   Jefferson   Avenue,   Suite   2000
　　St. Clair Shores, Michigan 48080
　　(586) 778-7778
　　office@ihrieobrienlaw.com
　　hperakis@ihrieobrienlaw.com