UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VLADIMIR STOJCEVSKI,

    Plaintiff,

                                Civil Case No. 17-11843
v.                                Honorable Linda V. Parker

COUNTY OF MACOMB, et al.

    Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART CORRECT CARE SOLUTIONS DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

This lawsuit arises from Plaintiff Vladimir Stojcevski's incarceration in the Macomb County Jail in June 2014. Plaintiff alleges that during his incarceration, Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights under 42 U.S.C. § 1983. He also alleges that Defendants' conduct amounted to gross negligence in violation of Michigan law. Presently before the Court is a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Correct Care Solutions ("CCS") and certain individuals employed by CCS (collectively "CCS Defendants"). The motion has been fully briefed. Finding the facts and legal arguments sufficiently developed in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

1

## I. Standard for Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Thus, a court may take judicial notice of "other court proceedings" without converting a motion to dismiss into a motion for summary judgment. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010)

(citing *Winget v. J.P. Morgan Chase Bank, N.A.*, 537 F.3d 565, 575 (6th Cir. 2008)).

## II. Factual and Procedural Background[1]

Plaintiff arrived at the Macomb County Jail on June 11, 2014. (Compl. ¶ 1.) On intake, Plaintiff was measured as being 5'6" in height and 165 pounds in weight. (*Id.* ¶ 44.) His blood pressure was 110/84, his pulse rate was 64, and his temperature was normal. (*Id.*) Prior to his incarceration, Plaintiff had been prescribed 600 mg. Neurontin TID, 2 mg. Klonopin TID, and 5/325 mg. Norco. (*Id.*) Plaintiff alleges that Lawrence Sherman, M.D. ("Dr. Sherman") chose to prescribe a less expensive medication in lieu of Neurontin and failed to determine the correct dosage or to prescribe a loading dose for this new medication. (*Id.* ¶ 57.) Dr. Sherman is the Medical Director of the Macomb County Jail and a CCS employee. (*Id.* ¶ 22.) Defendant Macomb County contracted with CCS to provide medical care and services at the jail. (*Id.* ¶ 19.)

Upon his arrival at the Macomb County Jail, Plaintiff was placed in a holding cell and then transferred to the "day room" for approximately two days. (*Id.*) On or about June 13, 2014, he was placed in the jail's Detoxification Unit. (*Id.*) Plaintiff remained in the unit until approximately 8:34 a.m. on June 17, 2014.

---

[1] Plaintiff attaches several materials outside the pleadings in response to the CCS Defendants' motion to dismiss. Because it is a Rule 12(b)(6) motion, the Court will not consider those materials.

4

(*Id.* ¶ 45.) Four hours later, he was transferred to a cell in the jail's Mental Health Unit. (*Id.*) He was moved around cells within the Mental Health Unit over the next thirty-two hours. (*Id.*)

At around 9:00 p.m. on June 18, 2014, Plaintiff was moved to a "step-down" cell in the Medical Unit, where he remained for about three days. (*Id.* ¶ 46.) He stayed in two different cells during this period. (*Id.*) He was moved to the Mental Health Unit on June 21, where he remained until 8:39 p.m. on June 23, 2014. (*Id.* ¶ 50.) Early in the evening on June 23, Plaintiff was transported to McLaren Medical Center. (*Id.*) Upon his arrival at the hospital, Plaintiff was diagnosed as suffering from the following: (a) systemic inflammatory response syndrome criteria with possible sepsis; (b) acute peritoneal cellulitis; (c) muscular edema secondary to infections versus inflammation of the bilateral gluteus maximus muscle group; (d) acute encephalopathy; (e) possible rectal mucosal tear secondary to anal trauma; (f) increased white blood cell count; (g) acute intractable rectal and abdominal pain; (h) sacral wound; and (i) low potassium. (*Id.* ¶ 60.)

Prior to his hospitalization, while at the Macomb County Jail, Plaintiff had seizures accompanied by vomiting spells and bowel incontinence from about June 11-15, 2014. (Id. ¶ 51.) Plaintiff alleges that he requested the opportunity to clean the vomit and stool from his body, but his requests were denied. (*Id.* ¶ 54.) He

5

also alleges that he requested, but was denied, an examination of his lower extremity for injury or disease. (*Id.*)

According to Plaintiff, several CCS Defendants "knew of the extremely unsanitary conditions existing in [his] cell, and disregarded the serious risk of harm caused by those conditions, knowing that such unsanitary conditions can lead to, or contribute to, infectious processes developing or worsening to the point where hospitalization would be necessary …." (*Id.*) Specifically, Plaintiffs identifies those defendants as LPNs Deeann Pavey, Cynthia Deview, Vicki Bertram, Dinal Good, Sarah Breen, Dixie Debenne, Amber Barber, and Linda Parton. (*Id.*) Plaintiff alleges that he, in fact, suffered physical and mental injury as a result of being refused medical care and the ability to cleanse his body to remove the vomit and feces on his upper and lower extremities. (*Id.* ¶ 58.)

Dr. Sherman instituted an Alcohol or Sedative Hypnotic Withdrawal for Plaintiff from June 15-20, 2014. (*Id.* ¶¶ 4, 48.)

On June 19, 2014, Plaintiff was weighed by CCS Defendants Temittipe Olagbaiye, RN, and Deeann Pavey, LPN. (*Id.* ¶ 48.) He weighed 136 pounds, or 29 pounds less than his recorded weight at intake. (*Id.*) Plaintiff alleges that this weight loss was significant and posed a serious risk of harm to him, yet no action was taken by these nurses. (*Id.*) On June 22, 2014, Plaintiff complained of a

"racing" heart rate—presumably to CCS Defendant Vicki Bertram, LPN—who Plaintiff asserts did not contact a physician. (*Id.* ¶ 52.)

In his Complaint, filed June 9, 2017, Plaintiff names the County of Macomb, certain individuals employed by Macomb County, CCS, and the following CCS employees as Defendants: (a) Dr. Sherman; (b) RN Olagbaiye; (c) Health Services Administrator David Art, RN; (d) Director of Nursing Monica Cueny, RN; and (e) LPNs Pavey, Deview, Bertram, Good, Breen, Debenne, Barber, and Parton. In response to the CCS Defendants' motion to dismiss, Plaintiff stipulates to the dismissal of his claims against LPNs Barber, Breen and Debenne. (Pl.'s Resp. Br. at 6, ECF No. 39 at Pg ID 263.)

In the Complaint, Plaintiff alleges that Dr. Sherman was a supervisor and policy maker for CCS. (Compl. ¶ 22.) Plaintiff seeks to hold CCS, Dr. Sherman, and RNs Art and Cueny liable for maintaining unconstitutional policies and practices for managing inmates suffering from the signs and symptoms exhibited by Plaintiff and for failing to properly train the medical staff to provide constitutionally sufficient medical care. (*Id.* ¶¶ 77-84; 91-97.) Plaintiff specifically identifies a failure to train staff to monitor inmates' food and water intake and to identify dehydration and malnourishment. (*Id.*) Plaintiff identifies two previous jail inmates, David Stojcevski (Plaintiff's brother) and Jennifer

7

Myers, who suffered injuries, including death, while incarcerated at the Macomb County Jail due to a lack of proper medical care. (*See, e.g., id.* ¶¶ 15, 64, 65, 116.)

Plaintiff asserts the following three counts in his Complaint:

I) Violation of 42 U.S.C. § 1983 and the Eighth Amendment of the United States Constitution against all Defendants;

II) Failure to train, constitutionally deficient procedures, practices and protocol and failure to supervise-deliberate indifference against Defendants Macomb County, Macomb County Sheriff Anthony Wickersham, Macomb County Jail Administrator Michelle Sanborn, CCS, Dr. Sherman, HSA Arft, and RN Cueny;

III) Gross negligence, intentional, willful, and wanton conduct against all Defendants

(ECF No. 1.)

### III. CCS Defendants' Arguments for Dismissal & Analysis

#### A. Respondeat Superior Liability in Count I

The CCS Defendants first argue that Plaintiff's allegations against CCS in Count I are insufficient because CCS cannot be held liable under a theory of respondeat superior. This is correct. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Baynes v. Cleveland*, 799 F.3d 600, 620 (6th Cir. 2015) (citing *Monell*, 436 U.S. at 694) ("It is well established that a municipal entity may not be sued for injuries inflicted solely by its employees or agents under § 1983."). Plaintiff does not argue otherwise in his response brief. CCS may be liable under a theory that it maintained unconstitutional policies or practices or

failed to train its employees, causing Plaintiff's injuries. *Monell*, 436 U.S. at 690-91. While such a claim is stated in Count II of Plaintiff's Complaint, it is not stated in Count I.

Thus the Court agrees that Count I of Plaintiff's Complaint is subject to dismissal to the extent it is asserted against CCS.

### B. Supervisory and Municipal Liability

The CCS Defendants next argue that Plaintiff has not sufficiently alleged a *Monell* claim against CCS, Dr. Sherman, or RNs Cueny and Arft or a failure-to-train or supervise claim against Dr. Sherman or the RNs. It is important to first identify what claim or claims Plaintiff is asserting against these defendants.

Supervisory liability attaches only where

> the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [parties]."

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson Cty.*, 668 F.2d 869, 874 (6th Cir. 1982)). The "[p]laintiff ha[s] to prove that the[ defendant] did more than play a passive role in the alleged violation or showed mere tacit approval of the events." *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998); *Peatross v. City of Memphis*, 818 F.3d 233, 241-42 (6th Cir. 2016) ("We have long held that supervisory liability requires some 'active

9

unconstitutional behavior' on the part of the supervisor. However, 'active' behavior does not mean 'active' in the sense that the supervisor must have physically put his hands on the injured party or even physically been present at the time of the constitutional violation.") (internal citations omitted).

Where a supervisor also is a policymaker, care must be taken to distinguish an individual capacity claim against the supervisor and an official-capacity or municipal claim, as they turn on two different legal principles. *See Essex v. Cty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013). In *Essex*, the court explained the distinction between these two legal principles:

> For individual liability on a failure-to-train or supervise theory, the defendant supervisor must be found to have "'encouraged *the specific* incident of misconduct or in some other way directly participated in it.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). A plaintiff must demonstrate that the defendant supervisor "'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Id*. (quoting *Shehee*, 199 F.3d at 300). A mere failure to act will not suffice to establish supervisory liability. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).

*Essex*, 518 F. App'x at 355 (emphasis added). In contrast, an official capacity or municipal claim

> is a broader claim concerning the custom or policy of a municipality, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978), and thus would implicate the conduct of a defendant supervisor insofar as he acted with deliberate indifference in his official capacity as a policymaker. *See Phillips*, 534 F.3d at 543; *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2012).

> Such claims do not require direct participation in or encouragement of the specific acts; rather, these claims may be premised on a failure to act. *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012). A plaintiff must establish that the municipality, through its policymakers, failed to train or supervise employees despite: 1) having actual or constructive knowledge of a pattern of similar constitutional violations by untrained employees, *see Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407-08, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997); or 2) the fact that the constitutional violation alleged was a patently obvious and "highly predictable consequence" of inadequate training, *id.* at 409, 117 S. Ct. 1382 (discussing *City of Canton v. Harris*, 489 U.S. 378, 390 n. 10, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989)).

*Essex*, 518 F. App'x at 355-56.

Plaintiff alleges facts to adequately assert both theories against Dr. Sherman. According to Plaintiff, Dr. Sherman was directly involved in his medical care during his incarceration at the Macomb County Jail and prescribed the five-day detoxification protocol, which Plaintiff appears to be alleging was responsible for his rapid weight loss and other medical problems. Plaintiff also alleges that Dr. Sherman was a supervisor and policymaker who failed to train or supervise the medical staff despite prior similar constitutional violations by that staff.

In comparison, Plaintiff does not allege that RNs Arft or Cueny directly participate in the alleged violation of his Eighth Amendment rights.[2] In other words, the Complaint does not contain allegations relating to their direct involvement, encouragement, implicit authorization, approval, or knowing

---

[2] If discovery reveals that these individuals were directly involved in the alleged unconstitutional conduct, Plaintiff then can seek to add them back into this lawsuit.

acquiescence in the specific misconduct related to Plaintiff's medical care. As such, Plaintiff's claims against them individually must be dismissed.

Plaintiff, however, does assert facts to establish RN Arft's and RN Cueny's liability based on their failure to train the nursing staff at the jail and to develop and implement policies, practices, and procedures that would have protected Plaintiff's right to adequate medical care. These allegations seek to hold RNs Arft and Cueny (as well as Dr. Sherman, as indicated above) liable under an official capacity claim. "An official-capacity claim against a person is essentially a claim against [CCS]." *Peatross*, 818 F.3d 241. As such, the Court is granting the CCS Defendants' motion to dismiss RNs Arft and Cueny in their individual capacities.

### C. Individual Liability under § 1983

In a supplemental brief filed in support of its motion to dismiss, the CCS Defendants argue that Plaintiff fails to state an Eighth Amendment deliberate indifference claim against all of the individual defendants.

"The Eighth Amendment 'forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward his serious medical needs.'" *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976))). In *Jones*, the Sixth

Circuit described the elements of an Eighth Amendment "deliberate indifference" claim as follows:

> A Section 1983 claim asserting "a constitutional violation for denial of medical care has objective and subjective components." *Id*. The objective component requires the existence of a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994) (citation omitted). Such a medical need has been defined as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted). The subjective element requires "an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). Officials have a sufficiently culpable state of mind where officials act with "deliberate indifference" to a serious medical need. *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970 (citations omitted). The Supreme Court has defined "deliberate indifference" as being more than mere negligence but less than acting with purpose or knowledge. *Id*. at 835, 114 S. Ct. 1970. Instead, the prison official must have acted with a state of mind similar to recklessness. *Id*. at 836, 114 S. Ct. 1970. Thus, to prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk. *Id*. at 837, 114 S. Ct. 1970; *see also Cooper v. County of Washtenaw*, 222 Fed. Appx. 459, 466 (6th Cir. 2007); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).

*Jones*, 625 F.3d at 941 (brackets omitted).

To establish personal liability under § 1983, the plaintiff must show that each defendant charged "caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Stated differently, "a plaintiff must plead that each Government-official defendant, through the official's own actions, has

violated the Constitution." *Iqbal*, 556 U.S. at 676. The CCS Defendants contend that Plaintiff makes only "threadbare recitals of elements of a cause of action and conclusory statements against 'Individual Defendants' without naming any of those Defendants in the 33 paragraphs of Count I." (CCS Defs.' Suppl. Br. at 4, ECF No. 38 at Pg ID 246.) The Court does not agree.

Plaintiff alleges in paragraph 34 of the Complaint that the individual LPNs (which he identifies in preceding paragraphs) had direct treatment contact with him and were aware of his numerous medical conditions, yet failed to recognize his malnourishment, immediate need for proper food and fluid intake, and the signs and symptoms of his serious medical conditions.[3] Plaintiff alleges later in the Complaint that these LPNs knew of the extremely unsanitary conditions of his cell and disregarded the serious risk of harm those conditions posed to Plaintiff. (*Id.* ¶ 54.)

Plaintiff claims that RN Olagbaiye and LPN Pavey weighed him on June 19, 2014, and should have been aware that he was 29 pounds lighter than when he arrived at the jail only eight days earlier. (Compl. ¶ 48.) He alleges that this weight loss was significant and posed a serious risk of harm to Plaintiff, but these

---

[3] Plaintiff's medical records may demonstrate otherwise (as suggested by the citations to those records in Plaintiffs' response brief.) Nevertheless, the Court is not considering such extraneous evidence in deciding the CCS Defendants' motion to dismiss.

14

defendants took no action. (*Id.*) Plaintiff further alleges that LPN Bertram ignored his complaints of a "racing" heart beat. (*Id.* ¶ 52.)

These allegations are more than "threadbare" and, the Court concludes, sufficient at the pleading stage to adequately allege the individual defendants' personal involvement in the denial of his Eighth Amendment rights.[4]

**D.    Gross Negligence**

The CCS Defendants argue that gross negligence is not a viable claim under Michigan law, but instead is an exception to Michigan's Government Tort Liability Act. *See* Mich. Comp. Laws § 691.1407. Because they are not governmental employees, the CCS Defendants contend that the statute's gross negligence exception does not apply to them and Plaintiff's claim is simply one for medical malpractice to which the procedural requirements for filing suit in Michigan Compiled Laws § 600.2912b apply (and have not been satisfied). The CCS Defendants raised the same arguments when seeking dismissal of the same claim asserted in the complaint Plaintiff filed as the personal representative of his brother's estate. *See* Op. & Order, *Stojcevski v. County of Macomb,* No 15-11019, (E.D. Mich. Nov. 9, 2015), ECF No. 42 at Pg ID 910.

As it did before, the Court agrees with the CCS Defendants that Plaintiff's gross negligence claim against them is in fact a medical malpractice claim. *Id*.

---

[4] Aside from RNs Arft and Cueny as discussed in the preceding section.

15

(citing *Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824, 844-46 (W.D. Mich. 2012)). The Court continues to disagree with the CCS Defendants, however, that Michigan's procedural requirements for filing that claim apply here. *Id.* (citing *Long v. Adams*, 411 F. Supp. 2d 701, 705-07 (E.D. Mich. 2006)). As such, while the Court construes Plaintiff's gross negligence claim against the CCS Defendants as a medical malpractice claim, it denies their motion to dismiss that claim for failing to comply with Michigan's procedural requirements for such claims.

## IV. Conclusion

To summarize, the Court concludes that Plaintiff fails to state a viable claim against CCS in Count I of its Complaint. Plaintiff also does not allege facts to hold Defendants Monica Cueny or David Arft personally liable for the asserted denial of his Eighth Amendment rights. Thus, they are dismissed from this lawsuit to the extent they are sued in their individual capacity. Plaintiff, however, adequately alleges facts to state § 1983 individual liability claims against the remaining CCS Defendants and a § 1983 *Monell* claim against CCS and Defendant Lawrence Sherman.

Finally, the Court concludes that Plaintiff's gross negligence claim should be construed as a medical malpractice claim, but that it is not subject to dismissal.

Plaintiff stipulates to the dismissal of Defendants Amber Barber, Sarah Breen, and Dixie Debenne. Thus, the Court is dismissing those individuals from this litigation.

Accordingly,

**IT IS ORDERED** that the Correct Care Solutions Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that Amber Barber, Sarah Breen, and Dixie Debenne are **DISMISSED AS PARTIES** to this lawsuit, and Monica Cueny and David Arft, in their individual capacities, are **DISMISSED AS PARTIES** to this lawsuit.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: February 26, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, February 26, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager